**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-01015-TC

---

JEFFREY J.,

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY

*Defendant*

---

**MEMORANDUM AND ORDER**

Jeffrey J.[1] claims that he cannot work due to debilitating shoulder and psychological impairments. He seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income and Disability Insurance Benefits under 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is reversed and remanded for further proceedings.

**I**

**A**

**1**. Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax*

---

[1] Plaintiff will be referred to only by first name followed by initials to protect his privacy. *See Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2**. To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work considering his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled.

*Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits May 6, 2020, claiming a disability relative to musculoskeletal and psychological issues beginning on April 30, 2018. Doc. 8 at 1–2.[2] For portions of the alleged period of disability, Plaintiff was incarcerated. Doc. 8 at 3. During his incarceration he received treatment for back pain and muscle spasms. *Id.* After his release, he received further treatment for pain. *Id.*

Plaintiff was initially denied benefits March 23, 2021 and again, on reconsideration, on September 1, 2021. Doc. 8 at 1. He requested a hearing, which was held March 3, 2022. *Id.* at 5. Plaintiff testified at the hearing that he was unable to work due a combination of impairments, including back and shoulder pain. *Id.* He added that his right arm was barely functional and that he suffered from numbness, tingling, and muscle spasms. *Id.*

The ALJ issued a decision denying Plaintiff's application for benefits May 20, 2022. Adm. Rec. at 12. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2018. Adm. Rec. at 18. At step two, the ALJ found that Plaintiff had several medically determinable "severe" impairments: "degenerative disc disease of the lumbar spine with spondylosis, degenerative disc disease of the cervical spine, diabetes mellitus, degenerative joint disease of the right shoulder, post-traumatic stress disorder (PTSD), depression, anxiety disorder, and polysubstance dependence." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). The ALJ found that Plaintiff's vision loss, acute kidney failure, diabetic ketoacidosis, and syncope were non-severe. He also found that Plaintiff's professed carpel tunnel syndrome, hypertension, rectal bleeding, nightmares, social anxiety, paranoia, numbness in extremities, balance issues, and

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF. Factual references to the Administrative Record (Adm. Rec.) employ the internal record pagination.

memory problems were non-medically determinable impairments. *Id.* (citing 20 C.F.R. § 404.1513(a) and 20 C.F.R. § 404.1508).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. Adm. Rec. at 19. In particular, the ALJ explained why Plaintiff did not meet the criteria for Listing 1.15, 1.16, 1.18, 12.04, 12.06, and 12.15. *Id.*

At step four, the ALJ determined "after careful consideration of the entire record," that Plaintiff could perform "medium work." Adm. Rec. at 20 (citing 20 C.F.R. § 404.1567(c) and § 416.967(c)). Specifically, he found Plaintiff had the following RFC:

> The claimant is able to frequently climb ramps and stairs as well as occasionally climb ladders, ropes, and scaffolds. The claimant is able to frequently stoop, kneel, crouch, and crawl. The claimant can perform frequent overhead reaching with the right, dominant hand. The claimant may tolerate frequent exposure to extreme cold. However, the claimant must avoid all unusual hazards—defined in SSR 96-9p as "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." The claimant is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. The claimant can tolerate frequent interaction with the public, co-workers, and supervisors.

*Id.* at 20–21.

In arriving at that RFC, the ALJ determined that claimant's medically determinable impairments could "reasonably be expected to cause" his alleged symptoms: back, shoulder, and wrist pain, along with anxiety and uncontrolled blood sugar. Adm. Rec. at 21. But he determined that Plaintiff's "statements" about the intensity and persistence of those symptoms were not "entirely consistent with the medical

evidence" for several reasons including medical evaluations that showed mostly "normal" functioning and sensation in his extremities and that treatment notes showed that Plaintiff's diabetic ketoacidosis "may have been caused by [temporary] dehydration." *Id.* at 22. Moreover, a CT scan showed no "disc herniations or nerve root impingements," despite "moderate degeneration" in his spine. *Id.* And while Plaintiff had pain, he did not require regular pain treatment or any type of "surgical intervention for his spine or his shoulder." *Id.* The ALJ recognized that the lack of treatment may be due to Plaintiff's "financial situation," but noted that "the record [was] not suggestive of him seeking any low cost or no cost treatment." *Id.* at 23.

Turning to Plaintiff's mental impairments and symptoms, the ALJ noted that the record failed to "fully support [his] allegations of disabling … depression, anxiety, PTSD, and polysubstance dependence." Adm. Rec. at 23. In making that finding, the ALJ noted that Plaintiff received Remeron, a medication for depression, but little other treatment for such conditions. *Id.* Examinations showed Plaintiff "exhibited normal speech and appropriate mood," "normal thought process," and full orientation as well as "intact memory and fair insight and judgment." *Id.* The ALJ noted that Plaintiff received mental health treatment, including four medications, but that his "thought processes were linear," "he was alert and oriented," his judgment appeared "good," and "his affect was within normal limits," even if his concentration was "impaired" while receiving treatment. *Id.* The ALJ did address the fact that Plaintiff reported "visual hallucinations," but also reported that he was not "taking his medications on a consistent basis," and that "[t]reatment notes from periods of sobriety do not reflect that he had ongoing hallucinations, suicidal ideations, or panic attacks." *Id.* at 23–24.

The ALJ's assessment of the medical opinions in the record was mixed. He found the opinions of E. Bergman-Harms and G.R. Ibarra, state agency psychological consultants, partially persuasive because both opinions proposed limitations on interactions with others that the ALJ found were not consistent with Plaintiff's demonstrated ability to interact appropriately with others while doing activities like shopping and interacting with health care providers. Adm. Rec. at 24–25. The ALJ also found the opinions of Marcia Foster and Amita Hedge, state agency medical consultants, only partially persuasive because the record reflected greater limitations in range of motion than either doctor reported. *Id.* at 25. The ALJ further found Plaintiff's discharge

5

instructions, which advised limiting his lifting and walking, to be not persuasive as they were intended to be "temporary restrictions." *Id.* at 26.

At step five, the ALJ found that Plaintiff was unable to perform any past relevant work, including as a personal care attendant and garbage collector, and that Plaintiff was of "advanced age" and "limited education." Adm. Rec. at 26. The ALJ nevertheless found that there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* at 27. Such jobs included riveting machine operator, casting machine tender, and boring machine tender. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

## II

Plaintiff argues the ALJ's conclusion that he was not disabled due to a combination of musculoskeletal and psychological issues was not supported by substantial evidence and therefore should be reversed. Doc. 8 at 5. Although the ALJ's conclusion may ultimately be justified by the evidence, Plaintiff has identified a factual error in the ALJ's analysis that may affect the outcome. *See* Doc. 8 at 9. As a result, Plaintiff's request for remand is granted.

When it comes to factual errors, remand is required if the outcome of a disability determination may have been different and more favorable to the claimant absent an ALJ's factual error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Todorova v. Comm'r, SSA*, 762 F. App'x 510, 514 (10th Cir. 2019); *K.I. v. Kijakazi*, No. 20-1110, 2021 WL 4149087, at *3 (D. Kan. Sept. 13, 2021). Errors are harmless, and do not require remand, if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (concluding remand was not required since the RFC was supported by substantial evidence, any failure to discuss the evidence in "sufficient" detail notwithstanding).

Plaintiff contends the ALJ made a factual conclusion about disc herniation that is contrary to the record. In particular, the ALJ asserted that Plaintiff's CT scans "did not reveal any disc herniations." *See* Adm. Rec. at 22. Contrary to that assertion, a November 4, 2021 CT scan of Plaintiff's cervical spine—the latest imaging study which appears in the record—indicated "posterior disc osteophyte complex at C5-C6 with

*right central disc extrusion* … moderate facet and severe uncovertebral joint disease … moderate severe left and mild right neuroforaminal stenosis and moderate spinal canal stenosis." Adm. Rec. at 761 (emphasis added).

The Commissioner concedes that the ALJ's finding of no herniations despite the noted right central disc extrusion was factual error. Doc. 9 at 5 n.4. And an independent review of the record confirms that the ALJ was without substantial evidence supporting the decision to diverge from the November 2021 CT Scans. No later imagining exists in the record which might undermine the finding of a hernia. Nor does a conservative treatment plan and lack of surgical intervention, two factors the ALJ mentioned in discussing the November CT Scans, necessarily show that the ALJ was correct to find there were no hernias present in November scans.[3]

Remand is required because it is conceivable that the outcome would change without the factual error. Based on the ALJ's erroneous conclusion that the CT scan showed no herniation, the ALJ found that "[t]he claimant can perform frequent overhead reaching with the right, dominant hand" despite Plaintiff's testimony that he could "barely use [his] right arm." *See* Adm. Rec. at 22 (rejecting Plaintiff's contentions in part based on there being no hernia in the records) and 59 (transcribing Plaintiff's testimony as to the use of his right arm). Absent that factual finding, it may be that the ultimate conclusion would not follow. Without the ability to reach frequently with the right hand, it becomes unclear whether Plaintiff would be able to perform the "representative occupations" as the vocational expert attested, something which it is the Commissioner's burden to prove, and which was the determinative factor in concluding Plaintiff was not disabled. *Id.* at 27; *cf. Harper v. Astrue*, 428 F. App'x 823, 829 (10th Cir. 2011) (finding harmless error where an error occurred at step four and did not affect the step five determination). Thus, the outcome in this case may have been different without the error, even presuming that substantial evidence supported other aspects of the opinion. S*ee Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("Any attempt to save the decision,"

---

[3] If, however, there is separate evidence which led the ALJ to conclude Plaintiff did not have a hernia, then the ALJ was under an obligation to discuss it. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (An ALJ is required to discuss supporting evidence, "the uncontroverted evidence [he] chooses not to rely upon, as well as significantly probative evidence [he] rejects.").

despite the consequential errors in determining the RFC or available jobs, would usurp "the ALJ's primary responsibility to determine" those questions); *see also Callan v. Berryhill*, No. CV 17-441, 2018 WL 840026, at *5 (D.N.M. Feb. 13, 2018) (determining an error in failing to apply or discuss a step-two finding of severe impairment due to obesity at step three and four was not harmless).

The Commissioner argues the ALJ's factual error did not alter the outcome and therefore that remand is not required. *See* Doc. 9 at 5 n.4 (citing *Terwilliger v. Comm'r, SSA*, 801 F. App'x 614, 622 (10th Cir. 2020)). It may be that the outcome will not change on remand because the functional limitations assessed on remand will ultimately be the same as those previously assessed, but that does not show that "no reasonable factfinder" could resolve the consequential fact issue related to Plaintiff's hernia in another way or that it is inconceivable that a different resolution of the fact issue might change the RFC and the outcome. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (indicating that a person of Plaintiff's age, limited education, and limited transferable skills may qualify as disabled if limited to "light work"); *cf. Michael Lynn D. v. Kijakazi*, No. CV 22-4023, 2023 WL 3275779, at *4 (D. Kan. May 5, 2023) (concluding that evidence of a hernia did not lead to more functional limitations than the assessed RFC in part because the record indicated that the hernia had been repaired). Accordingly, remand is required. The remainder of Plaintiff's arguments need not be reached as "they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### III

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case is REMANDED for further proceedings consistent with the reasoning above.

It is so ordered.

Date: May 7, 2024         s/ Toby Crouse
    Toby Crouse
    United States District Judge